## Case No. 14,104.

### TORREY v. BEARDSLY.

[4 Wash. C. C. 242.] [1]

Circuit Court, D. Pennsylvania. April, 1818.

EJECTMENT—FRAUD IN PROCURING TITLE—PUBLIC LANDS—SPECIAL WARRANT—APPROPRIATED LAND—SURVEY—DATE.

1. In ejectment, the defendant was permitted to give evidence of fraud in the plaintiff, or one under whom he claimed, in obtaining the title derived from the defendant.

[Cited in Allin v. Robinson, Case No. 249.]

[Cited in Dobbs v. Kellogg, 53 Wis. 453, 10 N. W. 625.]

2. A special warrant for land before appropriated is a lost warrant, but may be laid as a general warrant on any other unappropriated land. And if the surveyor had traced the lines of a tract without a warrant, he may, without going again on the land, apply such warrant to such land, and the survey when returned bears date as of the day when the survey, and not the application, was made.

[3. Cited in Salmon v. Burgess, Case No. 12,-262, to the point that, in contemplation of law, there is no fraction of a day, unless when an inquiry as to the priority of acts done on the same day becomes necessary.]

This was an ejectment [by the lessee of David Torrey against Beardsly] to recover a parcel of land lying in Wayne county. The plaintiff's title, the evidence, and the grounds of objection to the recovery, are fully stated in the charge.

WASHINGTON, Circuit Justice. The plaintiff comes before the jury with a regular paper title to the land in controversy, founded on two warrants for four hundred acres each, dated in 1793, granted in the names of Walter Kemble and Eliza Kemble; described as lying on the head waters of the north-east branch of Lacowaxen, to include an open meadow. The surveys bear date in July, 1794, and are of different tracts of land from those described in the warrants, to which they were

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

removed on account of the prior appropriation of the tracts for which they called. The surveys were returned into the office, and accepted in January, 1797. On the 13th of August, 1796, deeds were executed by Walter and Eliza Kemble to Jason Torrey, by which they conveyed to him all their right and title to the above warrants, and the lands surveyed, or to be surveyed under them, for the consideration of £20, being the amount of the original purchase money paid to the state for the warrants. In March, 1802, an order of resurvey was granted, on the application of Jason Torrey, and the whole quantity, not comprehended within prior surveys, was found to amount to three hundred and seventy-two acres, for which a patent was granted to Jason Torrey on the 1st of January, 1810, who in September, 1818, conveyed the same to the lessor of the plaintiff. The defendant claims the possession as tenant under Walter Kemble, and disputes the plaintiff's title upon the ground of fraud, in obtaining from him and Eliza Kemble the conveyances stated. Jason Torrey acted as deputy surveyor in the district where these surveys were made; and he is charged with having fraudulently concealed from Walter Kemble the fact, that the survey of the land in dispute had been made at the time he purchased the warrants from him, and with having deceived him by a representation that there was no vacant land on which to lay them. The court has permitted the defendant to go into proof to establish the alleged fraud, and if he has done so to your satisfaction, he is entitled to your verdict, it being agreed, that the lessor of the plaintiff purchased from his brother Jason, with full notice of the above charge, and that upon this ground a verdict had been rendered against him in an ejectment brought by Kemble against him in the state court.

I shall first lay before you a summary of the most material parts of the evidence on each side (taxing your memories with a recollection of those not deemed very material by the court), and will then lay down those principles of law which apply to the case. Mordecai Roberts has deposed, that the warrants in question, together with thirty others belonging to the witness, were placed in the hands of Mr. Beard, the surveyor, in the year 1793, to be surveyed; that Roberts's warrants being elder in date than Kemble's, were accordingly surveyed in that year by Jason Torrey. In consequence of these locations, as was stated to you by other witnesses, the land which Kemble's warrants described was appropriated, and could not be laid according to their calls. This witness further stated that, in the summer of 1796, Jason Torrey mentioned Kemble's warrants to him as being lost, and advised him to purchase them, which he declined, stating that Kemble suspected him of some improper conduct in appropriating the land his warrants designated,

and, on that account, would not sell them to him; but he, Roberts, advised Torrey to become the purchaser, which he did in the course of that day. In 1806, the witness heard for the first time, that Kemble's warrants had been located by Torrey on the land in dispute. He further states, that after the location of his thirty warrants in 1793, he advised Kemble to lay his warrants on other vacant lands, which he refused to do, declaring that, unless he could obtain the land described in his warrants, he would have none. Schoonover, Benjamin and Charles Kemble, were also examined on behalf of the defendant,—who have deposed that in the summer of 1796 they were present when Jason Torrey called upon Kemble, and stated to him that he did not think he could find any vacant land on which to lay his warrants, as it had been appropriated, and inquired what was to be done with them? Kemble answered, that he supposed he must lose the land, but presumed he could get back the money which he had paid for the warrant. Torrey stated that this could not be done, and then offered to purchase the warrants from him for what they had cost him, as on account of money which he owed at the office, they would answer his purpose. This proposition was agreed to, and was accordingly carried into execution.

The conclusions of fact drawn by the defendant's counsel from this evidence, are, 1. That though these warrants were not surveyed according to their calls, still they were surveyed by Jason Torrey on other vacant land, in the year 1794, long before his purchase of them from Walter Kemble. 2. That he stated to Kemble that there was no vacant land on which they could be laid. And, 3. That he did not communicate to Kemble the fact that they had actually been surveyed. If these conclusions are fairly drawn, it will be difficult for Jason Torrey to escape from the charge of a fraudulent concealment of a material fact, known to himself, and of which Kemble was ignorant; a fact which, if true, would not fail to have had an important influence upon the mind of Kemble in deciding upon the value of the warrants, and a concealment which gave to the transaction a higher taint of fraud, from the circumstance of its being practiced by a public officer, especially charged with the duty of executing warrants placed in his hands. But the jury will bear in mind that this charge of fraud rests essentially upon the asserted fact, that Kemble's warrants were really laid on the land in dispute, at the time the surveys bear date, or at some period prior to that when the purchase was made. If not so, then the fact asserted to have been concealed did not exist, and could not therefore be concealed. As to the alleged misrepresentation in stating to Kemble that there were no vacant lands on which to lay these warrants, the jury will judge from the whole of the evidence taken together, whether Torrey could have intend-

ed to say, or whether Kemble could so have understood him, that there was no vacant land on which to lay lost warrants; or whether both parties did not understand the information as applying to the specific land called for in these warrants; if the latter, and the plaintiff's witnesses are believed, then Torrey was guilty of no misstatement, as the land described in these warrants had been appropriated.

I come now to the evidence given on the part of the plaintiff. Mr. Beard, the surveyor, has deposed, that after he had executed Roberts's thirty warrants, there remained no vacant land on any part of the north east branch of Lacowaxen to satisfy the calls of Kemble's warrant, which fact he stated on the ground to Mr. Roberts, and which was assented to by him. This being the fact, the witness considered Kemble's as lost warrants, the meaning of which the court understands to be, warrants which, being descriptive upon their face, lost their character as such, in consequence of the previous appropriation of the land for which they called. But though lost and ineffectual as to the particular land described in them, still they may assume a new character, and like warrants general and indescriptive in their origin, may be laid upon any other land not then appropriated. This witness proceeded to state, that it is never considered to be the duty of a surveyor, nor is it ever done in practice, to survey a lost warrant on other vacant land without the special direction of the owner, accompanied by a designation of the ground on which he wishes to lay it, and his furnishing chain carriers, provisions, &c., to enable the surveyor to perform the work. That it is a common practice for surveyors to survey tracts of vacant land, or as many of the sides as may be necessary to enable them to plot them, without having warrants at the time in their possession, and afterwards when a lost warrant is placed in their hands to survey, to apply it to some tract before surveyed, without again tracing the lines on the ground; and in these cases the survey is always returned, and bears date as having been made at the time when, in reality, it was made, and not as of the time when the application was made. The reason which the witness assigned for this practice is, that in any contest respecting those lands at a future day, the blocks in the trees will be found to correspond with the real time when the chops were made. The witness further stated, that in the autumn of 1796, Torrey informed him that he had purchased Kemble's warrants, and intended to apply them to the land now in controversy, instead of two other warrants, which he had before purchased for that purpose; that the application was accordingly made, and the warrants, deeds from Kemble, and a diagram of the land were delivered to him, to have the certificates signed by Caruthers, the deputy surveyor, and returned into the land office. This witness, as

well as many others examined for the plaintiff, stated that the branch of Lacowaxen, on which the land in controversy lies, has always been known as the west branch, and that on which Roberts's warrants were laid as the north, or north-east branch; in confirmation of which, the more ancient surveys of Shields on the latter, and of three others on the former were laid before the jury. Moses Kellam deposed that in the year 1792, Kemble stated to him that he had discovered some good land on Big brook, a stream running into the north branch of Lacowaxen, which he was desirous to take up; and in 1793 he informed him that he had obtained two warrants for that land. That some time after the sale of the warrants to Torrey, he and Kemble were near Big brook, on the west side of it, when Kemble pointed across the brook to the land he had intended to take up. The witness then expressed his surprise that he had not retained his warrants, and laid them on other vacant lands, to which he replied, that he was glad he had sold them, as he would have no land unless he could have obtained that which his warrants described. These declarations were repeated after he knew that Torrey had covered the land in controversy by those warrants, accompanied by a wish that he might make out well with the land. The witness also expressed a decided opinion that Kemble's warrants could not have been located according to their calls, after the surveys of Roberts's warrants. Jason Torrey was also examined as a witness, who deposed that Kemble pointed to the land surveyed for Shields previous to 1792 as the land intended to be covered by his warrants, and being advised by the witness to lay them on other vacant lands, as they had then become lost warrants, he declined doing so, assigning the same reason which he had given to the other witnesses. This witness declares that at the time he purchased these warrants from Kemble, he had no intention of applying them to the land in dispute, or to any other in particular, having previously provided himself with two other warrants for this purpose. Two other witnesses, Jacob Kemble and Mr. Halbert, were examined, to prove that the land contemplated by Kemble as coming within the calls of his warrants, was on Big brook, and the first of the witnesses confined it to the tract surveyed for Shields.

From the above evidence, if believed by the jury, the following conclusions of facts arise, viz.: 1. That Kemble's warrants could not be located on the north east branch of Lacowaxen, according to their calls and his own declared intentions, and consequently they were, what Torrey stated them to be, lost warrants. 2. That they could not, agreeably to their calls, have been laid on the land in dispute, and that, as lost warrants, Torrey had no right, nor was it his duty, to lay, or apply them to other vacant lands, without the special instructions of Kemble. 3. That in

August, 1796, when the purchase of those warrants was made by Torrey, they continued to be lost warrants, unsurveyed, and unapplied to the land in controversy, or to any other, and were consequently worth no more than what Torrey paid for them; that it was customary with surveyors to make surveys of lands, which they supposed might be vacant, without warrants, and afterwards to apply lost or general warrants to them, without retracing the lines on the ground; and that the surveys so made were returned as of the date when they were made, and not that when the application of the warrant to the survey was made. 4. That although the survey of these warrants bears date in 1794, yet they never were in fact surveyed at any time, but were applied to those surveys after they were purchased. 5. That Kemble had no intention, or wish, to lay those warrants on any land but that which they described.

If these conclusions of fact be, in the opinion of the jury, fairly drawn, the court feels no difficulty in stating to you, that, in point of law, the charge of fraud is not made out. There was no falsehood asserted, or misrepresentation made, since the land called for by Kemble's warrants was not vacant, but appropriated by prior warrants and carried into survey. No material fact was concealed; for the land now in controversy was at the time vacant, unsurveyed and unapplied, and not even intended to be so. And although it had been so intended, yet Torrey would have been guilty of no fraud in concealing such intention from Kemble, a knowledge of the existence of vacant tracts of land being equally accessible to Kemble as to Torrey, if he had used the same industry. If from the official situation of the latter, from his superior judgment, or from any other cause, he had a better opportunity of gaining this information than others, he was fairly entitled to any benefit which he might legally derive from it, and was not bound to communicate it to the holder of a lost warrant, any more, than one merchant, who purchases a particular article from another, with a view to make a profit upon it at a market known to himself alone, is bound to communicate that fact to the vendor before he concludes the purchase.

It was contended by the defendant's counsel, that the purchase, in this case, was not of the land covered, or which might be afterwards covered, but of £20, the original price of the warrants. But there is no ground for this argument. It could hardly have been worth the while of Mr. Torrey to take all the trouble which this negotiation cost him, for no other purpose but to pay £20, and to receive in return the same sum. It is unlikely, therefore, that this was the intention of the parties. Besides, the deeds from the Kembles expressly convey their right to the land surveyed, or to be surveyed, under those warrants. In short, the purchase was of the warrants, which it was competent to the ven-

dee to use for his own benefit as he might think proper.

Another point made by the defendant's counsel, was, that if, in truth, as contended for by the plaintiff, these surveys were not made in 1794, then the return of the survey as having been then made, was false, and could consequently afford no legal foundation for the patent which issued on it. This argument is equally unfounded with the other. If it was customary to make these surveys without warrants, and afterwards to apply lost warrants to them, which surveys were returned into the land office as of the day the survey was actually made, and were accepted; these facts not only negative the charge of fraud, but remove all objections to the title, unless, between the survey returned and accepted, some other person has acquired a title to the land from the commonwealth.

The last objection made by the defendant is, that the conveyance by Jason Torrey to the lessor of the plaintiff was a fraud upon the jurisdiction of this court, the transfer having been made after a decision in the state court against the title of Jason Torrey, and with a view to give jurisdiction to this court. If the two witnesses who have been examined on this point are believed by the jury, the conveyance was made bona fide, for a valuable consideration, without any secret trust or understanding between the parties, inconsistent with what the deed itself purports. If so, then the conveyance is not a fraud upon the jurisdiction of the court; and the parties being citizens of different states, both the constitution and laws of the United States vest this court with a jurisdiction of the cause, which cannot be affected by the circumstance that a verdict had been rendered in the state court for the grantor, prior to his sale and conveyance of the property to the lessor of the plaintiff. Verdict for the plaintiff.

---

TORREY (BEARDSLEY v.). See Case No. 1,190.